CAROLINA CORONA, ESQ.
Florida Bar No.: 645222
CORONA LAW FIRM P.A.
6700 SW 38th Street
Miami, Florida 33155
carolina@coronapa.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI FLORIDA DIVISION**

| | |
|---|---|
| **ELMER OMAR MEJIA FLORES**<br><br>Petitioner,<br><br>v.<br><br>**MARKWAYNE MULLIN, in his official Capacity as Secretary of the Department of Homeland Security; TODD BLANCHE, in his official Capacity as Attorney General of the United States; TODD M. LYONS, in his official capacity As Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; GARRETT J. RIPA, in his official capacity as Field Officer Director of the Miami Field Office and Customs Enforcement and Enforcement and Removal Operations; and JOSEPH B. EDLOW, in his official capacity as the director of the United States Citizenship and Immigration Services.**<br>Respondents. | Case No.: |

**COMPLAINT FOR DECLARATORY AND INJUCTIVE RELIEF AND APA RELIEF**

Petitioner, **ELMER OMAR MEJIA FLORES**, by and through undersigned counsel, Corona Law Firm P.A., hereby files this Complaint for Declaratory and Injunctive Relief and APA relief and states as follows:

## INTRODUCTION

Plaintiff, ELMER OMAR MEJIA FLORES (hereinafter "Plaintiff" or "Mr. Mejia Flores") is a non-citizen who has received a prima facie eligibility on his Form I-360, Petition for Amerasian, Widower, or Special Immigrant as a victim, specifically as a self-petitioner under the provisions of the Violence Against Women Act ("VAWA"), had a pending Form I-485, Petition to Adjust or Register Permanent Residency, pending form I-212, Application to Reapply for Admission after Deportation or Removal, and pending form I-601, Application for Waiver of Grounds of Inadmissibility. On or about April 16, 2026, Plaintiff was under no criminal investigation at the time he was detained. On or about April 21, 2026, a Form I-246, Application for A Stay of Deportation or Removal was filed. To date, there was no adjudication on said request to stay his deportation, Instead, Plaintiff was momentarily transferred to Louisiana Detention Facility and promptly deported. Plaintiff respectfully seeks injunctive relief for the reasons stated in the Complaint below and as a class member of *Immgr. Ctr. For Women & Child. v. Noem*, No.: 2:25-CV-09848-AB-AS (C.D. Cal. May 20, 2026).

## JURISDICTION

1. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.
2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), regarding Plaintiff's constitutional claims under the Fifth and Fourth Amendment of the Constitution and claims raised under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.
3. This Court has authority to enter declaratory relief under 28 U.S.C. §§ 2201 and 2202 and preliminary and permanent injunctive relief under Federal Rule of Civil Procedure 65 and the Court's traditional equitable powers.

4. The Federal government has waived its sovereign immunity and permitted judicial review of agency action. 5 U.S.C. §702. Sovereign immunity does not bar claims against federal officials that seek to prevent violations of federal law, rather than monetary relief.

**VENUE**

5. Pursuant to 28 U.S.C. § 1391(e) (1), an action may "be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides[.]" 28 U.S.C. § 1391(e) (1); *Ramos-Lopez v. Bondi*, Case No: 1-26-cv-01175-PX (D. Md. June 17, 2026).

6. Venue is proper pursuant to 28 U.S.C. § 1391(e) because Respondents are officers, employees, and agencies of the United States acting in their official capacities, Petitioner resided in Miami, Florida and because a substantial part of the events and omissions giving rise to the Petitioner's claims, including his warrantless arrest occurred in the State of Florida.

**PARTIES**

7. Petitioner, ELMER OMAR MEJIA FLORES, is a citizen and national of Honduras and was unlawfully detained on April 16, 2026. Plaintiff applied as a self-Petitioner for VAWA of which on June 2, 2026, he received an extension to his prima facie eligibility. Prior to his removal, he resided in Hialeah, Florida for several years.

8. Respondent, MARKWAYNE MULLIN, is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security. In this capacity, Respondent is responsible for the implementation and enforcement of the Immigration and National Act, and overseas U.S. Immigration and Customs Enforcement, United States Citizenship and Immigration Services ("USCIS") and United States and Border Protection ("CBP"), the component agent responsible

for Petitioner's detention and removal. Respondent is a legal custodian of Plaintiff's and is in a position of authority to facilitate Plaintiff's return to United States.

9. Respondent, TODD BLANCHE, is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (hereinafter "DOJ"). In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (hereinafter "EOIR"), which administers the immigration courts and the BIA. Respondent is a legal custodian of Plaintiff's and is in a position of authority to facilitate Plaintiff's return to United States.

10. Respondent, Todd Lyons, is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. In this capacity, Respondent is a legal custodian of Petitioner and possesses authority over ICE detention policies, including the authority to release Plaintiff from custody and facilitate his return the United States. He is sued in his official capacity.

11. Respondent, Garret J. Ripa, is sued in his official capacity as the Field Office Director of ICE's Enforcement and Removal Operations for the Miami Field Office. As such, Respondent is responsible for overseeing Plaintiff's initial detention and custody within the Miami area of responsibility and received Plaintiff's request for stay of removal. Respondent is a legal custodian of Plaintiff's and is in a position of authority to facilitate Plaintiff's return to United States.

12. Respondent, JOSEPH B. EDLOW, is sued in his official capacity as the Director of the United States and Immigration Services. Respondent is sued in his official capacity. Respondent is a legal custodian of Plaintiff's and is in a position of authority to facilitate Plaintiff's return to

United States and is in a position of authority to adjudicate or oversee Plaintiff's requested relief on his pending application.

**STATEMENT OF FACTS**

13. Plaintiff is a native and citizen of Honduras.

14. On or about January 20, 1997, Plaintiff entered the United States.

15. Plaintiff was subsequently placed in proceedings and was granted Voluntary Departure on or about October 8, 1997. Plaintiff was given until November 7, 1997 to depart the United States and if he failed to do so, the Order granting voluntary departure would be withdrawn and an Order of deportation would take its place.

16. Plaintiff applied and was granted Temporary Protected Status ("TPS").

17. Plaintiff departed the United States after the allotted time on the Voluntary Departure Order. Plaintiff returned to the United States without inspection in approximately 2007.

18. On or about August 23, 2023, Plaintiff married his USC wife, Elizabeth Garcia.

19. On or about September 8, 2023, Plaintiff filed Form I-360 under VAWA as a VAWA self-Petitioning parent of a U.S.C. or LPR. Plaintiff also filed a Form I-485, Petition to Adjust or Register Permanent Residency, form I-212, Application to Reapply for Admission after Deportation or Removal, and form I-601, Application for Waiver of Grounds of Inadmissibility.

20. Plaintiff also was granted a work permit based on the pending Petition to Adjust or Register Permanent Residency.

21. Plaintiff, alongside his wife, own and run Green Tree Landscaping Services, Inc.

22. USCIS reviewed Plaintiff's VAWA application and determined that Plaintiff established a prima facie case under the self-petitioning provisions of VAWA.

23. On or about December 15, 2025, Plaintiff receive an extension of the prima facie eligibility of which remained valid until June 13, 2026.

24. The notice further stated that USCIS did not expect to issue a final decision before the expiration of the 180-day period and that Plaintiff would automatically receive an extension if the period approached expiration without a decision.

25. On April 16, 2026, ICE arrested Plaintiff.

26. Plaintiff was not the subject of any pending investigation, has no outstanding bench warrants, and had not committed any unlawful activity at the time of his arrest.

27. ICE promptly transferred Plaintiff to the Broward Transitional Center.

28. Plaintiff promptly filed a Form I-246 on April 21, 2026, seeking a stay of his removal for several reasons including the fact that he had a prima facie determination on his VAWA application, and his pending form I-360 under VAWA as a VAWA self-Petitioning parent of a U.S.C. or LPR, form I-485, Petition to Adjust or Register Permanent Residency, form I-212, Application to Reapply for Admission after Deportation or Removal, and form I-601, Application for Waiver of Grounds of Inadmissibility.

29. Plaintiff's family as well as his counsel, made several efforts to follow up with the Stay of Removal.

30. On April 28, 2026, a Request for Expedited, concerning the Form I-360, I-485, I-601, and I-212, was submitted to USCIS. Forms I-485, I-601, and I-212 were outside of the USCIS processing times.

31. The ICE officers were informed of the pending Expedited Request and the negative adverse effects removal would have on his application to adjust status and I-601 waiver as well as the consequences if he were removed given his immigration history. Plaintiff's unlawful removal would create a permanent bar issue and effectively revoke his pending I-485 and I-601 waiver.

32. Plaintiff was subsequently transferred to the Central Louisiana Processing Center. Counsel promptly set a detainee appointment set for May 15, 2026.

33. Plaintiff was deported on or about May 13, 2026 without notifying counsel nor adjudicating the Stay of Removal.

34. On the day of May 15, 2026, the client was not produced for the appointment and counsel was not notified of his removal.

35. To date, there has not been an adjudication received on the Plaintiff's request for Stay of Removal.

36. However, on or about June 26, 2026, Plaintiff's expedited request for his Form I-360 and Form I-485 have been approved and both applications have been transferred "in order to speed up processing." (See Exhibit A, Transfer Notice of I-360 and Transfer Notice I-485).

37. Additionally, on or about June 16, 2026, Plaintiff was scheduled for a biometrics appointment on his Form I—485, Application to Register Permanent Residence or Adjust Status with the appointment set for June 29, 2026 at 8:00AM. (See Exhibit B, ASC Appointment Notice).

38. Plaintiff had a pending VAWA self-petition when ICE detained him and pursued his removal.

39. Due to Plaintiff's unlawful removal, he will not be able to attend his biometrics appointment to continue to proceed with moving his application along due to his unlawful removal.

40. Plaintiff remains outside the United States, separated from his USC Wife, family, home, business and community.

LEGAL FRAMEWORK

**A. ICE POLICY NO.11005.4**

41. ICE has historically maintained policies addressing civil immigration enforcement involving noncitizens with pending victim-based immigration benefits. The policies direct agents to refrain from taking civil immigration-enforcement action against known beneficiaries and applicants for victim-based immigration benefits absent exceptional circumstances and to coordinate with USCIS when appropriate.

42. The 2011 Policy directed ICE personnel to "minimize any effect that immigration enforcement may have on the willingness and ability of victims, witnesses, and plaintiffs to call police and pursue justice[1]." *See 2011 Policy, p.1.* The policy further stated that "[a]bsent special circumstances or aggravating factors, it is against ICE policy to initiate removal proceedings against" known victims of a crime. *Id.*

43. In fact, the 2021 Directive maintained that if an application is pending, ICE would "defer decisions" on enforcement until final determinations are made on pending petitions or a negative determination is made on an interim adjudication such as a wait list determination[2]. Further "[t]he fact that someone is a victim of a crime and . . . may be eligible for victim-based benefits" is to be considered a "positive discretionary factor." *See 2021 Policy.*

---

[1] ICE Policy Statement 10076.1: Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs (Jun. 17, 2011).
[2] ICE Directive 11005.3: Using a Victim-Centered Approach with Noncitizen Crime Victims (Dec. 2, 2021).

44. On January 30, 2025, ICE issued Policy No. 11005.4, entitled "Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits."

45. Policy No. 11005.4 rescinded and superseded prior ICE policies protecting applicants for victim-based immigration benefits. *See 2025 Policy, p. 1.*

46. Policy No. 11005.4 eliminated the prior presumption against civil immigration-enforcement action involving victim-based applicants and eliminated routine coordination with USCIS for expedited adjudication.

47. Policy No. 11005.4 applies to noncitizens with pending VAWA self-petitions, U-visa petitions, and T-visa petitions. *See 2025 Policy, p. 3.*

48. On May 20, 2026, the United States District Court for the Central District of California entered an order in *Immigration Center for Women and Children v. Noem*, Case No. 2:25-cv-09848-AB-AS, (C.D. Cal. May 20, 2026), preliminarily certifying a nationwide class that includes individuals with pending VAWA self-petitions whom ICE detains or seeks to detain for civil immigration enforcement. (See Exhibit C, Order granting Class Certification and Order granting in part and denying in part Motion for preliminary injunction).

49. The Court in *Immigration Center for Women and Children*, stayed Policy No. 11005.4, including its rescission of the prior policies, in favor of the members of the certified classes.

50. The Court also certified the following members:

    a. Pending Petition Class: All individuals with pending principal or derivative U visa petitions, T visa petitions or VAWA self-Petitions who ICE detains or seeks to detain for civil immigration enforcement.

b. Deferred Action Class: All individuals to whom USCIS has granted deferred action based on a pending U or T visa petition and who, during the authorized period of deferred action, ICE detains, seeks to detain, or removed without providing notice and an opportunity to be heard regarding potential revocation of their deferred action status.

c. Stay of Removal Class: All individuals with a pending U or T visa petition who, since January 30, 2025, have been, are, or will be detained by ICE and who request or requested a stay of a final removal order prior to enforcement of that removal order.

*Immigration Center for Women and Children v. Noem*, Case No. 2:25-cv-09848-AB-AS, (C.D. Cal. May 20, 2026).

**B. VAWA**

51. Noncitizens whose qualifying family member was abusive are allowed to "self-petition" for a family-based immigrant visa for themselves and/or their children without their abuser's knowledge, consent, or participation, instead of requiring them to petition through the sponsorship of their abusive family member. 8 U.S.C. §1101 (a) (51), 1154(a)(1)(A)(iii), (B)(iii).

52. VAWA self-petitioners who establish a "prima facie case" may receive federal public benefits. 8 U.S.C. §§1611, 1164(c). As such, USCIS must promptly determine what it sets out to be a "prima facie case." 8 C.F.R. §§204.2(c)(6)(i), (e)(6)(i).

53. Congress has expanded protections for domestic violence victims several times with the most recent time occurring in 2005, with the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162 (2006) ("VAWA 2005"). The co-sponsor, Representative Conyers provided remarks in the Congressional Record Extension of which most pertinent is "Prima facie determinations and deferred action grants should not be revoked by immigration agents. . . .Immigration enforcement officials at the Bureau of Immigration and Customs Enforcement of not have the authority to overrule a [US]CIS grant of deferred

action to a [survivor].” 151 Cong. Rec. E2605-04, E2607, 2005 WL 3453763 (Dec. 17, 2005) (Statement of Rep. Conyers).

54. Once the application is approved, the petitioner may petition to become an LPR.

## CLAIMS FOR RELIEF

### COUNT I: ICE POLICY NO. 11005.4 IS ARBITRARY AND CAPRICIOUS -5 U.S.C. §§702, 706(2)(A)

55. Plaintiff re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

56. The 2025 ICE policy No. 11005.4 is reviewable under the APA because it constitutes a “final agency action for which there is no other adequate remedy in Court.” 5 U.S.A. §704.

57. The Administrative Procedure Act (hereinafter “APA”), 5 U.S.C. § 706(2), requires courts to “hold unlawful and set aside” agency action that is arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law. *See* 5 U.S.C. § 706(2)(A). An agency acts arbitrarily and capriciously when it fails to examine relevant factors, ignores important aspects of the problem, departs from settled practice without reasoned relevant factors, ignores important aspects of the problem, departs from settled practice without reasoned explanation, or treats discretion as categorically unavailable where Congress has not so provided. *Judulang v. Holder*, 565 U.S. 42, 53-55 (2011).

58. Moreover, it is a well-established administrative principle that “agency action taken without lawful authority is at least voidable, if not void *ab initio.” L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 35 (D.D.C. 2020), citing *SW General, Inc. v. NLRB*, 796 F.3d 67, 79 (D.C. Cir. 2015); *see also Hook v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 555 (9th Cir. 2016) (invalidating agency action because it was taken by unauthorized official).

59. The 2025 ICE policy No. 11005.4 reversed decades of consistent policies that created a presumption against detention and removal of noncitizen survivors of domestic violence, human trafficking, and other serious crime, in favor of a policy of detention and deportation whenever possible, so long as it does not disrupt a criminal prosecution.

60. The reason provided for this change is due to the President's Executive Order entered on January 20, 2025 which states it is the policy of the United States to achieve the "total and efficient enforcement of [immigration' laws" against *all* inadmissible and removable aliens. *See 2025 Policy, p. 2.*

61. No where does the 2025 policy analyze factors or justifies such abrupt change against victims of crimes of which Congress for many years effectuated policies for their protection.

62. Defendants thus failed to account adequately for the reliance interests created by the victim-based immigration framework and prior protective policies in place for several decades. This unexplained reversal of course is arbitrary and capricious under the APA. *Judulang*, 565 U.S. at 55.

63. The Defendants have acted arbitrarily and capriciously by detaining Plaintiff without any individualized assessment or reasoned explanation, especially given his *prima facie* determination on his VAWA application.

64. Defendants failed to consider the relevant factors in Petitioner's case, including but not limited to:

   a. Plaintiff's lack of criminal history and non-dangerousness;

   b. His demonstrated compliance with immigration authorities;

   c. His pending application as self-petitioner on his VAWA application;

d. Congress' express intent that bona fide applicants for VAWA and other survivor-based benefits are generally protected from civil enforcement;

e. Comparison between the applicants for VAWA applicants compare to "ICE's best interests"; and

f. Public safety issues that Congress sought to address regarding the willingness of noncitizens to report crime.

65. Petitioner has no pending criminal charges, has not engaged in violent behavior, and has consistently cooperated with immigration authorities.

66. Defendants failed to provide a reasoned explanation for disregarding the purposes and protections underlying the prior policies.

67. The application of the 2025 Policy to Plaintiff caused continuing injury by detaining and removing him while his applications remained pending and impairing his ability to pursue those applications from the position he held before May 13, 2026.

68. Plaintiff is entitled to declaratory and injunctive relief restoring the position he occupied before ICE applied the challenged policy and removed him.

WHEREFORE, Plaintiff respectfully request that this Court order his immediate return for Defendant's unlawful deportation and restoring his position in relation with his pending applications prior to his unlawful removal consistent with the Administrative Procedure Act, the Immigration and Nationality Act, and governing constitutional principles.

**COUNT II: ICE POLICY NO. 11005.4 IS CONTRARY TO THE LAW AND IN EXCESS OF STATUTORY AUTHORITY - 5 U.S.C. §§702, 706(2)(A), (C).**

69. Plaintiff re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

70. Under the APA, courts "Shall . . . hold unlawful and set aside agency action" that is, among other things, "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §706(2)(A), (C).

71. The statutory scheme established by Congress and implemented through binding regulations, requires applicants for VAWA or other survivor-based benefits to be generally protected from detention and removal unless serious adverse factors warrant otherwise.

72. By imposing a policy of enforcement against all removable noncitizens, the 2025 Policy effectively encourages rapid removals without consideration of any equities of those Congress has authorized to remain in the United States.

73. As a result, the 2025 policy is not in accordance with the law and is in excess of statutory authority since it does not require Defendants to consider any equities, including Plaintiff's prima facie eligibility on his VAWA self-Petition as a positive factor in favor of permitting him to remain in the United States.

WHEREFORE, Plaintiff respectfully request that this Court enter an order declaring the 2025 policy to be contrary to the law and in excess of statutory authority and order his immediate return for Defendant's unlawful deportation and restoring his position in relation with his pending applications prior to his unlawful removal consistent with the Administrative Procedure Act, the Immigration and Nationality Act, and governing constitutional principles.

**COUNT III: DEFENDANTS HAVE VIOLATED THE ACCARDI DOCTRINE DUE TO THE DE FACTO REVOCATION POLICY WHICH VIOLATES THE PM, REGULATIONS, AND LONGSTANDING PRACTICE.**

74. Plaintiff re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

75. Under the *Accardi* doctrine, federal agencies are required to follow their own binding regulations, and failure to do so renders resulting agency action unlawful. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974).

76. The Supreme Court has long recognized that governmental agencies are required to follow their own procedures. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).

77. Generally, USCIS does not make prima facie determination for self-petitions filed from outside the United States. Self-petitioners who are outside the United States are not eligible for U.S. public benefits. Pub. L. 104-193, 110 Stat. 2105 (August 22, 1996).

78. Self-Petitioning spouses, children, and parents of abusive U.S. Citizens are considered immediate relatives and may seek adjustment or an immigrant visa immediately after approval of the self-petition, as a visa is immediately available. INA 201(b); INA 245(a); 8 C.F.R. 245.2(a)(2)(i).

79. Immediate relatives in the United States also have the option to file an application for adjustment of status concurrently with the self-petition, as the visa is immediately available after the petition is approved. 8 C.F.R 245.2(a)(2)(i)(B)-(C).

80. Plaintiff in this case had already received a Notice of Prima Facie Determination. Such determination rests with USCIS alone.62 Fed. Reg. 60769, 60770.

81. Further, the determinations that relied solely with USCIS as an applicant that was within the United States when he applied as a self-petitioner under VAWA and received the prima facie determination.

82. Such determinations that were within USCIS's discretion were unilaterally stripped from Plaintiff upon the issuance of the 2025 Policy, his unlawful arrest and subsequent removal from the United States.

83. Plaintiff has suffered irreparable harm as the benefits he once enjoyed from filing within the United States, such as concurrent filing and prima facie determination, were effectively revoked upon Plaintiff's unlawful removal.

WHEREFORE, Plaintiff respectfully request that this Court enter an order declaring the 2025 policy in violation of the *Accardi Doctrine* and order his immediate return for Defendant's unlawful deportation and restoring his position in relation with his pending applications prior to his unlawful removal.

**COUNT IV: PLAINTIFF'S FIFTH AMENDMENT DUE PROCESS RIGHTS WERE VIOLATED BY ICE'S DE FACTO REVOCATION POLICY, REVOKING PLAINTIFF'S PRIMA FACIE DETERMINATION, APPLICATION TO REGISTER PERMANENT RESIDENCE AND APPLICATION, AND WAIVER WITHOUT A HEARING OR PROCESS.**

84. Plaintiff re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

85. The 2025 policy is enforced against "all" inadmissible and removable noncitizens with no substantive justification.

86. The Fifth Amendment guarantees that no person shall be deprived of liberty without due process of law. Noncitizens physically present in the United States, including those who entered without inspection, are "persons" within the meaning of the Fifth Amendment and

entitled to full procedural due process protections. *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001); *Landon v. Plasencia,* 459 U.S. 21, 32 (1982).

87. "The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." *Mathers v. Eldrige*, 424 U.S. 319, 348 (1976).

88. Thus, some form of "hearing is required at some time before a person is finally deprived of his property interests." *Wolff v. McDonnell,* 418 U.S. 539, 557-558 (1974).

89. In determining whether process is sufficient, courts apply the familiar *Mathews* test, considering whether "the private interest will be affected by the official action;" the risk of an erroneous deprivation of such interest through procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and the governments interest. *Mathews*, 424 U.S. at 335.

90. In this case, Plaintiff was not even provided a meaningful review of his Form I-246, Request for Stay of Deportation or Removal.

91. To date, Plaintiff has received no written decision on the request, he has not received a response in relation to the Expedited Requests as to his pending applications, nor a response concerning the adverse effects deportation would have on his VAWA and other pending applications.

92. Plaintiff received a prima facie determination, is eligible for benefits, and had a concurrent Petition to Adjust status pending. Plaintiff's prompt removal and revocation of such benefits affects Plaintiff's private interest as a survivor/victim.

93. Additionally, Plaintiff's applications, specifically the I-360 and I-485, have been transferred for faster processing but due to his unlawful removal, Plaintiff's process is delayed since he

will not be able to attend his biometrics notice on a timely matter or interview unless he is promptly returned to the United States.

94. The government's interest in providing no process to applicants such as Plaintiff is little to none since the margin of wrongfully revoking benefits by not providing the process is extremely low.

WHEREFORE, Plaintiff respectfully request that this Court enter an order declaring the 2025 policy violated Plaintiff's Fifth Amendment Right and order his immediate return for Defendant's unlawful deportation and restoring his position in relation with his pending applications prior to his unlawful removal.

**COUNT V: PLAINTIFF'S FOURTH AMENDMENT RIGHTS WERE VIOLATED WHEN HE WAS UNLAWFULLY ARRESTED.**

95. Plaintiff re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

96. The Fourth Amendment prohibits unreasonable searches and seizures by the Government. *Kidd v. Mayorkes,* 734 F. Supp. 3d 967, 978 (C.D. Cal. 2024). This requires "a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan,* 443 U.S. 137, 142 (1979).

97. Probable cause requires "facts and circumstances sufficient to warrant a prudent man in believing that the suspect committed or was committing an offense." *Gerstein v. Pugh,* 420 U.S. 103, 111 (1975).

98. Plaintiff was never provided any facts or circumstances sufficient to warrant his arrest.

99. He was not committing any criminal activity, he did not have any open warrants against him, nor was he part of any investigation.

100. At a minimum, upon Defendants receiving notification of his pending application, specifically as a self-Petitioner under VAWA, he should at least be provided an opportunity for his applications, at the very least his Request for Stay of removal, to be adjudicated.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court grant the following relief:

1. Declare that Plaintiff is within the class members pursuant to the Order entered in *Immigration Center for Women and Children v. Noem*, Case No. 2:25-cv-09848-AB-AS, (C.D. Cal. May 20, 2026) on May 20, 2026, and enter an Order awarding him the same relief as other members within his class;
2. Declare the 2025 policy arbitrary and capricious, an abuse of discretion and contrary to law in violation of the APA;
3. Enjoin Defendants from implementing the 2025 policy that fails to consider eligibility for VAWA as a positive factor against imposition of civil immigration enforcement;
4. Declare the 2025 de facto revocation policy arbitrary, capricious and contrary to law;
5. Declare the 2025 de facto revocation policy violated Plaintiff’s Fourth and Fifth Amendment Rights;
6. Issue a writ of mandamus and/or habeas corpus requiring Defendants to allow the Return of Plaintiff and any subsequent adjudication for relief be conducted *nunc pro tunc* to the time prior to their removal;
7. Enjoin Defendants from treating the May 13, 2026 removal or Plaintiff’s court-facilitated return as a new adverse immigration event or as a basis to impair, deny, deem abandoned, or terminate any pending application or waiver request;

8. Enjoin Defendants from detaining or re-detaining Plaintiff solely because of the May 13, 2026 removal, the court-facilitated return, or the same record that existed before May 13, 2026, absent a lawful individualized basis and the process required by law;

9. Preserve Plaintiff's ability to pursue all administrative and judicial remedies available to him;

10. Award Plaintiff his recoverable costs and reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority; and

11. Grant such further relief as the Court deems just and proper.

CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2026, I filed the foregoing Complaint electronically through the CM/ECF system which caused all parties or counsel to be served electronically means as more fully reflected on the Notice of Electronic filing.

Dated this 27th day of June, 2026.

*/s/Carolina Corona*
Carolina Corona, Esq.
Florida Bar No.: 645222
Corona Law Firm P.A.
6700 SW 38th Street
Miami, Florida 33155